**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
TANIA RODRIGUEZ,

                            Plaintiff,                                        **MEMORANDUM**
                                                                               **AND ORDER**

                                                                               CV 14-1766 (JFB) (AKT)

                - against -

NNR GLOBAL LOGISTICS USA INC.,
ALEX WOLUEWICH, AND
SEAN MACHIDORI,

                            Defendants.
-------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.     PRELIMINARY STATEMENT**

Plaintiff Tania Rodriguez ("Rodriguez" or "Plaintiff") brings this employment discrimination, hostile work environment, and retaliation action against her former employer, defendant NNR Global Logistics USA Inc. ("NNR"), and individual defendants Alex Woluewich ("Woluewich") and Sean Machidori ("Machidori") (together with NNR, "Defendants"), alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New York State Human Rights Law, N.Y. Exec. L. § 290 *et seq.* ("NYSHRL"). *See generally* Compl. [DE 1]. Plaintiff was terminated from NNR on October 4, 2013. *See id.* ¶ 63. Plaintiff alleges that the stated basis for her termination – *i.e.*, that she falsely punched in and out while at work "and that she cost company money due to mistakes in shipment" – was pretextual and that she was actually terminated in retaliation for reporting the discrimination and hostile work environment she experienced at NNR. *See id.* ¶¶ 63-65.

Presently before the Court is Plaintiff's motion to quash Defendants' proposed *subpoenas duces tecum* directed to: (1) companies Plaintiff worked for prior to her employment with NNR (the "Pre-NNR Employers"), (2) companies Plaintiff worked for after her termination from NNR (the "Post-NNR Employers"); (3) companies Plaintiff applied to (but never worked for) after she was terminated from NNR (the "Applicant Companies"); and (4) job searching websites Plaintiff has used to search for employment (the "Job Search Websites"). *See* Plaintiff's Memorandum of Law In Support of Application to Quash Subpoenas ("Pl.'s Mem.") [DE 76]. Defendant opposes the motion. *See* Memorandum of Law to Defendants' Opposition to Plaintiffs' Application to Quash Subpoenas ("Defs.' Opp'n") [DE 78]. For the reasons set forth in this Memorandum and Order, Plaintiff's motion to quash is GRANTED, in part, and DENIED, in part.

## II. LEGAL STANDARDS

Under Rule 45 of the Federal Rules of Civil Procedure, any party may serve a subpoena commanding a non-party, as relevant here, to "attend and testify[, and/or] produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control[.]" Fed. R. Civ. P. 45(a)(1)(A)(iii)). Rule 45 further provides that "[o]n timely motion, the issuing court must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." *Id.* (c)(3)(A)(iii)-(iv). "The decision whether to quash or modify a subpoena is committed to the sound direction of the trial court." *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 291 (E.D.N.Y. 2011) (citations omitted); *see In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 68 (2d Cir. 2003); *John Wiley & Sons, Inc. v. Doe Nos. 1-30*, 284 F.R.D. 185, 189 (S.D.N.Y. 2012) ("A determination to grant or deny . . . a motion to quash a subpoena is discretionary."); *Solomon v. Nassau Cnty.*, 274 F.R.D. 455, 460 (E.D.N.Y. 2011) ("Motions to quash subpoenas under the

Rules are 'entrusted to the sound discretion of the district court.'") (quoting *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003)).

"A subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement." *Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. 2010) (internal quotation marks omitted); *see, e.g.*, *In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011) ("Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)"); *Ford Motor Credit Co. v. Meehan*, No. CV 05-4807, 2008 WL 2746373, at *4 (E.D.N.Y. July 11, 2008). Pursuant to Rule 26(b)(1), parties may obtain discovery regarding any non-privileged matter that is relevant to the subject matter involved in the pending litigation. Fed. R. Civ. P. 26(b)(1). Relevance in this context "'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case.'" *AP Links, LLC v. Russ*, 299 F.R.D. 7, 11 (E.D.N.Y. 2014) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)) (citing *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992) (noting that the scope of discovery under Rule 26(b) is "very broad")); *see, e.g.*, *Warnke*, 265 F.R.D. at 66. Moreover, information within the scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1).[1] "In response to a motion to quash a subpoena, the party issuing the

---

[1] While Plaintiff's motion to quash was pending, Rule 26(b)(1) was amended to allow discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). As explained in the Advisory Committee's Note to the December 2015 amendment, "the provision for discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence'" has now been eliminated. Fed. R. Civ. P. 26 Advisory Committee's note. However, "[u]nder the amended Rule, 'relevance is still to be construed

subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Libaire*, 760 F. Supp. 2d at 291 (quoting *Kingsway Fin. Servs., Inc. v. Pricewaterhouse–Coopers LLP*, No. 03-CV-5560, 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008)); *see, e.g.*, *AP Links*, 299 F.R.D. at 11 (quoting *Night Hawk Ltd. v. Briarpatch Ltd.*, 03-CV-1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003)); *Crosby v. City of New York*, 269 F.R.D. 267, 282 (S.D.N.Y. 2010).

"Once the party issuing the subpoena has demonstrated the relevance of the requested documents, the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is over-broad, duplicative, or unduly burdensome." *AP Links*, 299 F.R.D. at 11 (quoting *Kingsway Fin. Servs.*, 2008 WL 4452134, at *4) (internal quotation marks omitted); *see Libaire*, 760 F. Supp. 2d at 291 (quoting *Corbett v. eHome Credit Corp.*, No. 10–CV–26, 2010 WL 3023870, at *3 (E.D.N.Y. Aug. 2, 2010)); *accord John Wiley & Sons, Inc.*, 284 F.R.D. at 189 (burden on motion to quash is borne by the moving party); *Ford Motor Credit Co.*, 2008 WL 2746373, at *5 (same). "Whether a subpoena imposes an 'undue burden depends on such factors as relevance, the need of the party for the documents, the breadth of the document request, the time

---

broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense.'" *Henry v. Morgan's Hotel Grp., Inc.*, No. 15-CV-1789, 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016) (quoting *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14–CV–9792, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015)) (internal quotation marks and alteration omitted); *accord Bagley v. Yale Univ.*, No. 13-CV-1890, 2015 WL 8750901, at *7 (D. Conn. Dec. 14, 2015). As courts in this Circuit have observed, "the amended Rule is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information." *Henry*, 2016 WL 303114, *3 (S.D.N.Y. 2016); *accord Augustyniak v. Lowe's Home Ctr., LLC*, No. 14-CV-00488-JJM, 2016 WL 462346, at *5 (W.D.N.Y. Feb. 8, 2016). Particularly, in the context of a motion to quash a subpoena, "the Court should consider both the nature of information sought and whether its production is 'proportional to the needs of the case.'" *Henry*, 2016 WL 303114, at *3 (quoting Fed. R. Civ. P. 26(b)(1)).

period covered by it, the particularity with which the documents are described and the burden imposed.'" *Libaire*, 760 F. Supp. 2d at 293-94 (quoting *Ebbert v. Nassau Cty.*, No. 05- CV-5445, 2007 WL 674725, at *4 (E.D.N.Y. Mar. 5, 2007)); *accord Crespo v. Beauton*, No. 15-CV-412, 2016 WL 259637, at *2 (D. Conn. Jan. 21, 2016) (quoting *Travelers Indemnity Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005)).

### III. DISCUSSION

#### A. Plaintiff's Standing to Oppose the Proposed Subpoenas

As a threshold matter, it is undisputed that, as Plaintiff states in her motion, she has standing to move to quash Defendants' proposed non-party subpoenas. "Generally, standing to quash a non-party subpoena exists where the plaintiff asserts a legitimate privacy interest in the information sought." *Warnke*, 265 F.R.D. at 66 (citing *Ireh v. Nassau Univ. Med. Center*, No. 06-CV-09, 2008 WL 4283344, at *3 (E.D.N.Y. Sept. 17, 2008), *aff'd*, 371 F. App'x 180 (2d Cir. 2010); *Mirkin v. Winston Res., LLC*, No. 07-CV-02734, 2008 WL 4861840, at *1 (S.D.N.Y. Nov. 10, 2008)). "Here, the plaintiff has a privacy interest with respect to information contained in her employment records, and thus, can challenge the subpoenas." *Lev v. S. Nassau Communities Hosp.*, No. 10-CV-5435, 2011 WL 3652282, at *1 (E.D.N.Y. Aug. 18, 2011) (citing, *e.g.*, *Warnke*, 265 F.R.D. at 66) (footnote omitted).

#### B. Proposed Subpoena to the Pre-NNR Employers

Defendants seek to subpoena three Pre-NNR Employers – China Airlines, Nippon Express, and Compass Forwarding – and to direct these companies to produce the following documents:

> 1. All applications for employment, resumes, and curriculum vitae provided by or on behalf of the . . . [Plaintiff];
>
> 2. All disciplinary actions, complaints, and/or incident reports involving the . . . [Plaintiff];

>3. All claims of improper conduct made regarding the . . . [Plaintiff];
>
>4. Any and all complaints, claims, charges or threatened complaints including complaints filed in court or in arbitration made by or on behalf of the [Plaintiff] . . . and any documents related thereto;
>
>5. Any and all documents regarding EEOC or related state agency complaints by or on behalf of the above-named employee; and
>
>6. Any and all documents pertaining to the termination of the above-named employee's employment, the reasons for cessation of employment whether voluntary or involuntary, including, but not limited to, letters of resignation, notices of termination, and exit interviews.

DE 76-1 at 1. Plaintiff contends that the proposed subpoena seeks disclosure of confidential information which is not relevant to the instant action and which could harm Plaintiff's professional reputation. *See* Pl.'s Mem. at 5-6. Defendants argue, among other things, that the documents sought from Plaintiff's Pre-NNR Employers are relevant to "establishing Plaintiff's lack of credibility" and therefore should be disclosed. Defs.' Opp'n at 7.

As discussed, the party seeking enforcement of the subpoena carries the initial burden to establish both relevance and materiality as to the allegations and claims at issue. *See, e.g.*, *Warnke*, 265 F.R.D. at 66. Defendants have failed to carry that burden here with respect to the documents sought in: Demand No. 1 (employment applications, resumes, and *curriculum vitae*); Demand No. 2 (disciplinary actions, complaints, and incident reports); Demand No. 3 (claims of improper conduct); and Demand No. 6 (documents relating Plaintiff's termination). As a preliminary matter, the Court notes that, assuming NNR did its own due diligence before hiring Plaintiff in 2006, the materials which might actually be ***relevant*** in the broadest sense should already be in NNR's possession, at least with respect to Plaintiff's most recent employer prior to NNR, Compass Forwarding. Moreover, the documents Defendants seek from Plaintiff's Pre-NNR

Employers are more than ten years old at this point. The Court therefore finds that the information contained in those documents would have little probative value to this litigation, if any.

More importantly, Defendants have not demonstrated that the requested documents may be used to challenge Plaintiff's credibility. Defendants assert that they have "uncovered multiple instances of Plaintiff misrepresenting her employment background" and that Plaintiff also misrepresented her "educational history" to NNR. Defs.' Opp'n at 1, 7. To support these claims, Defendants have submitted: (1) excerpts from Plaintiff's deposition testimony in this action; and (2) the declaration of Neal Rosenberg ("Rosenberg"), the president of a company Plaintiff applied to after she was terminated from NNR, which states that, *inter alia*, Plaintiff falsely represented her employment status on her resume. *See* Pl.'s Dep. Tr., annexed to Affirmation of Peter Moskowitz, Esq. in Support of Defendants' Opposition ("Moskowitz Affirm.") as Ex. H [DE 79-1]; Declaration of Neal Rosenberg ("Rosenberg Decl."), annexed to Moskowitz Affirm. as Ex. A [DE 79-1]. In light of this purported "evidence," Defendants maintain that they are entitled to "receiv[e] information directly from [Plaintiff's] past employers to gauge whether Plaintiff misrepresented her employment history . . . to NNR and other employers." Defs.' Opp'n at 7.

The Court has reviewed the excerpts of Plaintiff's deposition testimony, as well as the Rosenberg declaration, and finds that neither of these submissions demonstrates Defendants' entitlement to the records they seek from the Pre-NNR Employers. Although Defendants contend that Plaintiff misrepresented her "educational history" to NNR, the accuracy of this contention is not evident from the selected portions of deposition testimony Defendants have provided in opposition to this motion. On the present record, Defendants' "perceived incongruity" concerning Plaintiff's educational history "falls short of a sufficient basis to warrant discovery of the plaintiff's prior employment records." *Addona v. Parker Hannifin Corp.*, No. 13-CV-1616, 2014

WL 788946, at *2 (D. Conn. Feb. 25, 2014) (citing *Lev*, 2011 WL 3652282, at *1). The Court further finds that the statements in the Rosenberg declaration are insufficient to show that Plaintiff was dishonest on her application for employment with NNR or that she misrepresented information about her previous employment during this litigation. *See Bernstein v. Mafcote, Inc.*, No. 12-CV-311, 2014 WL 3579494, at *4 (D. Conn. July 21, 2014) (rejecting the defendant's argument that resumes and job applications from the plaintiff's prior employers "may be used to attack plaintiff's credibility" as "completely speculative and unavailing" where the defendant "fail[ed] to proffer any deposition testimony or other evidence suggesting plaintiff was dishonest on his application for employment with defendant"); *Lev*, 2011 WL 3652282, at *2 (holding that the defendants' claim that the information contained in plaintiff's resumes and job applications to prior employers "is relevant to plaintiff's credibility likewise fails" where the defendants "have not alleged nor provided any evidence that plaintiff has misrepresented information during the course of this action with respect to her previous employment to warrant production of these records"); *see also Henry*, 2016 WL 303114, at *3 ("Defendant has not offered sufficient (indeed any) evidence that [Plaintiff] made misrepresentations to Defendant regarding his prior employment to justify production of any of the records that Defendant seeks, or satisfied the Court that its production is proportional to the needs of the case.").

Moreover, to the extent Defendants seek to attack Plaintiff's credibility by showing that the information contained in the applications she submitted to her former employers is inconsistent with that submitted to NNR, "any such evidence would be barred under Federal Rule of Evidence 608." *Bernstein*, 2014 WL 3579494, at *4. Rule 608 provides that, other than evidence of criminal convictions, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R.

Evid. 608(b). The Rule "allows these matters to be 'inquired into' on cross-examination, but this permits a party only to elicit testimony from the witness about these instances, not to introduce documentary evidence." *Guercia v. Equinox Holdings, Inc.*, No. 11-CV-6775, 2013 WL 2156496, at *5 (S.D.N.Y. May 20, 2013); *see Bernstein*, 2014 WL 3579494, at *4. "It is true, of course, that evidence may have relevance beyond its admissibility at trial." *Guercia*, 2013 WL 2156496, at *5; *see generally* Fed. R. Civ. P. 26(b)(1); *Barrett v. City of New York*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006) (recognizing that the information sought pursuant to Rule 26 "need not be admissible at trial to be discoverable"). Here, however, it is clear that Defendants have already obtained evidence regarding Plaintiff's past conduct which they can use to challenge her credibility at trial. *See Guercia*, 2013 WL 2156496, at *5 (noting that the defendant already had access to evidence which would allow the defendant to prepare a line of questioning into the plaintiff's past conduct, and finding that records from the plaintiff's former employers therefore would be of little value in establishing the plaintiff's credibility at trial). "Thus, the marginal benefit to [Defendants] in obtaining the documents it seeks as evidence of [Plaintiff]'s credibility is also small, and outweighed by the harm that would be done by obtaining them by subpoena from [Plaintiff]'s former employers." *Id.* at *6; *see Bernstein*, 2014 WL 3579494, at *4 (same).

Defendants further contend that the records from the Pre-NNR Employers are relevant to their defense in this action that Plaintiff was terminated from NNR "for dishonesty." Defs.' Opp'n at 7. Specifically, Defendants maintain that they need the requested records to determine whether Plaintiff had "other credibility issues" while working for the Pre-NNR Employers, "including a history of misrepresenting her time." *Id.* This explanation amounts to little more than a contention that, if Plaintiff "misrepresented her time" or otherwise performed poorly during her tenure with the Pre-NNR Employers, "[she] most likely performed poorly during [her] tenure with Defendants

as well." *Ireh*, 2008 WL 4283344, at *5. However, Plaintiff's performance at the Pre-NNR Employers "bears no relevance to h[er] actual work performance with Defendants," particularly since, as Plaintiff points out in her motion, Defendants have never asserted that NNR's decision to terminate Plaintiff was influenced by her prior employment. *Id.*; *see. e.g.*, *Henry*, 2016 WL 303114, at *3 (quashing subpoena served on prior employers seeking, *inter alia*, personnel files and disciplinary records, and stating that "[e]ven if Henry was not an 'exceptional' waiter at his prior jobs (whatever that may mean), it is not remotely apparent what difference that would make regarding the allegations of discrimination and retaliation he has made in this case"); *Vuona v. Merrill Lynch & Co.*, No. 10-CV-6529, 2011 WL 5553709, at *8 (S.D.N.Y. Nov. 15, 2011) (denying Merrill Lynch's request to subpoena the plaintiffs' former employers where "Merrill Lynch does not claim that its decision to terminate Plaintiffs—or any employment actions it took as to them between hiring and termination—were in any way influenced by Plaintiffs' prior employment"). The issue presented here is whether Defendants' conduct toward Plaintiff and their termination of her employment was based on valid considerations or violated Title VII and/or the NYSHRL. *See Henry*, 2016 WL 303114, at *3; *Vuona*, 2011 WL 5553709, at *9. Plaintiff's "prior employment has little if any bearing on that issue." *Henry*, 2016 WL 303114, at *3; *see Vuona*, 2011 WL 5553709, at *9 ("Simply put, the issue here is whether Merrill Lynch's decision-making as to Plaintiffs was based on valid considerations or whether it was influenced by gender bias. On the record before the Court, Plaintiffs' prior work histories have nothing to do with that."). "[A]ny peripheral relevance the requested documents might conceivably have is decisively outweighed by the potential for harassment or reputational injury presented by a subpoena to such a former employer." *Vuona*, 2011 WL 5553709, at *9.

The Court also points out that Plaintiff's "prior employment records are not likely to lead to the discovery of admissible evidence — such evidence, as Defendants describe it, would be inadmissible under Federal Rule of Evidence 404(a), which provides that '[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith.'" *Ireh*, 2008 WL 4283344, at *5 (citing *Chamberlain v. Farmington Sav. Bank*, No. 06-CV-01437, 2007 WL 2786421, at *3 (D. Conn. Sept. 25, 2007) (quashing subpoena served on the plaintiff's former employer when the defendant sought "to discover evidence of the plaintiff's performance history in order to show that he has a propensity for certain performance deficiencies")) (ellipsis omitted); *see Henry*, 2016 WL 303114, at *4 (stating that "the evidence to be adduced from the non-party employers would likely be inadmissible propensity evidence under Rule 404(a)").

Finally, the Court is aware that, as noted in their opposition, Defendants previously moved to dismiss the Complaint and to impose sanctions against Plaintiff in this action for allegedly falsifying certain emails produced during discovery and then lying about those emails during her deposition. *See* Defs.' Opp'n at 2-4; DE 59 (Defendants' motion to dismiss). Judge Bianco denied Defendants' motion, without prejudice, on the grounds that Defendants had not met their burden of demonstrating that Plaintiff had fabricated the emails in question, particularly in light of the contrary evidence proffered by Plaintiff. *See* 4/17/15 Oral Arg. Tr. at 35:8-14 [DE 72]. Defendants now appear to suggest that they should be permitted to subpoena the Pre-NNR Employers either because of the claims Defendants made against Plaintiff in their motion to dismiss, or as a means to potentially support those claims. *See* Defs.' Opp'n at 2-4. Whatever the reasoning, the Court declines Defendants' suggestion. First of all, Defendants have not provided the Court with any evidence showing that their motion to dismiss concerned anything more than

11

allegations of misconduct which are heavily disputed by both sides. Moreover, the records Defendants seek to subpoena from the Pre-NNR Employers have no bearing on Defendants' allegations that Plaintiff fabricated emails during discovery in *this* action. Defendants point out that, during oral argument on their motion to dismiss, Judge Bianco acknowledged that Defendants' allegations against Plaintiff were "serious" and that he allowed both parties to conduct further discovery on the issues raised in Defendants' motion. *See* Defs.' Opp'n at 4. However, Judge Bianco did not authorize Defendants access to the prior employment records Defendants now seek from the Pre-NNR Employers, and this Court declines to do so now on the basis of Defendants' prior motion to dismiss.

Accordingly, Plaintiff's motion to quash is GRANTED with respect to Demand No. 1, Demand No. 2, Demand No. 3, and Demand No. 6 in the proposed subpoena to the Pre-NNR Employers.

The Court now turns to Demand No. 4 and Demand No. 5 in the proposed subpoena, which respectively seek "[a]ny and all complaints, claims, charges or threatened complaints including complaints filed in court or in arbitration made by or on behalf of the [Plaintiff]," and "[a]ny and all documents regarding EEOC or related state agency complaints by or on behalf of the above-named employee," from the Pre-NNR Employers. *See* DE 76-1 at 1. The Court finds that some documents sought by these demands may be relevant to Defendants' claims and defenses in this action. *See generally Ireh*, 2008 WL 4283344, at *6, *6 n.3 (modifying subpoena to require prior employer to "produce documents or correspondence it possesses regarding any internal or external complaints of race or national origin discrimination made by Plaintiff" against the employer, but declining to "express any opinion as to the admissibility of any prior complaints of discrimination"). However, Demand Nos. 4 and 5 are overbroad as currently drafted. *See Henry*,

2016 WL 303114, at *2 (finding that "[b]lanket requests" seeking "all documents and communications" are "plainly overbroad and impermissible"); *Gropper v. David Ellis Real Estate, L.P.*, No. 13-CV-2068, 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014) (finding that a "request for 'any and all' documents . . . is inherently overbroad"); *Badr v. Liberty Mutual Grp., Inc.*, No. 06-CV-1208, 2007 WL 2904210, at *3 (D. Conn. Sept. 28, 2007) (finding request for "any and all" documents "overly broad").  The Court hereby modifies the proposed subpoena by (1) limiting Demand No. 4 to documents regarding internal or external complaints of national origin or sexual orientation discrimination made by Plaintiff against her prior employer, and (2) limiting Demand No. 5 to EEOC filings made by Plaintiff against her prior employer and any position statements submitted by the prior employer to the EEOC.  *See generally Ireh*, 2008 WL 4283344, at *6.  Moreover, Defendants are only permitted to serve the modified subpoena on Nippon Express, a company which Plaintiff testified she worked for five-and-a-half years prior to her employment with NNR.  *See* Pl.'s Dep. Tr. at 13:21-25.

Accordingly, Plaintiff's motion to quash is GRANTED as to Pre-NNR Employers China Airlines and Compass Forwarding.  As to Nippon Express, the motion to quash is DENIED, in part, with respect to Demand Nos. 4 and 5 in the proposed subpoena, and the proposed subpoena is MODIFIED to the extent set forth above.  If Defendants still intend to serve the modified subpoena on Nippon Express, they must do so by April 22, 2016.

### B. Proposed Subpoenas to the Post-NNR Employers, the Applicant Companies, and the Job Search Websites

Defendants also seek to serve subpoenas on Plaintiff's Post-NNR Employers, the Applicant Companies, and Job Search Websites.  *See* DE 76-1 at 2-4.  The proposed subpoena directed to the Post-NNR Companies seeks the same documents as those sought from the Pre-NNR Employers, as

well as: (1) "[a]ny and all documents including, but not limited to payroll records, sufficient to show the compensation paid to Plaintiff;" and (2) "[a]ny and all documents sufficient to show benefits paid to or offered to Plaintiff, including, but not limited to, pension plans, 401K plans, stock option plans, stock practice plans, and all SPDs related thereto, computers, PDAs, and automobile allowance." *Id.* at 2. The proposed subpoena directed to the Applicant Companies requests: (1) Plaintiff's applications for employment, resumes, and *curriculum vitae*; (2) "[a]ny correspondence between the Plaintiff and the Company regarding the employment application and the Company's consideration of the Plaintiff for employment; and (3) "[a]ny documents regarding the Company's decision to hire or not to hire the Plaintiff." *Id.* at 4. Finally, the proposed subpoena directed to Job Search Websites seeks: (1) Plaintiff's applications for employment, resumes, and *curriculum vitae*; (2) "[a]ny and all documents reflecting any job offers to the Plaintiff"; and (3) "[a]ny and all documents sufficient to establish the number of positions Plaintiff applied for and the dates of each such applications." *Id.* at 3.

Plaintiff urges the Court to quash these proposed subpoenas, arguing, as relevant here, that (1) she has already provided Defendants with "all relevant documents" regarding her efforts to mitigate damages, and (2) Defendants have already deposed her "on the issue of her post-NNR employment." Pl.'s Mem. at 9-10. Defendants assert in opposition that the proposed subpoenas "seek limited and relevant information concerning Plaintiff's mitigation efforts and credibility that have not been provided by Plaintiff despite numerous discovery requests." Defs.' Opp'n at 9. According to Defendants, "[w]hile Plaintiff now claims that she has produced the relevant documents establishing her mitigation efforts, she has yet to produce any job postings that she reviewed/or applied for; job applications; cover letters; resumes and/or correspondence or communications with any prospective employers (aside from the ones Defendants believe to be

14

fraudulent)." *Id.*; *see* Moskowitz Affirm. ¶¶ 16-17. In her reply, Plaintiff contends that the proposed subpoenas are intrusive and unnecessary in light of the fact that she has provided Defendants with her tax returns from 2013 and 2014, four offers of employment from 2014 and 2015, applications with "various employers," resumes, emails she receives from job searching websites "with the dates showing that she in fact registered with them," and "[a] list of employers with whom Plaintiff inquired [about] job positions." Plaintiff's Memorandum Of Law In Support Of Reply [DE 80], at 7.

The Court finds that Defendants may be entitled to certain information from the Post-NNR Employers, Applicant Companies, and/or Job Search Websites regarding mitigation of damages depending on whether Defendants have received sufficient information from Plaintiff during discovery. However, the Court cannot tell from the parties' submissions what specific discovery demands regarding mitigation Defendants are claiming Plaintiff has not adequately responded to and what information they allegedly still lack. In short, the Court finds that the way the parties have presented their arguments concerning mitigation of damages is not clear and not helpful, as it puts the Court in the position of not having the necessary material to determine whether Defendants should be permitted to seek mitigation-related information from the non-parties at issue here.

Accordingly, Plaintiffs' motion to quash is GRANTED with respect to the proposed subpoenas directed to Post-NNR Employers, Applicant Companies, and Job Search Websites. This ruling is without prejudice to Defendants providing the Court with a copy of (1) the specific document requests and interrogatories Defendants served on Plaintiff regarding mitigation of damages (identified by number and substance), and (2) Plaintiff's responses to Defendants' interrogatories, as well as the actual documents Plaintiffs produced in response to the documents

requests regarding mitigation of damages. If Defendants intend to make such a submissions, they must do so by letter motion no later than April 20, 2016. Plaintiff will be permitted to file a response by April 27, 2016.

Finally, the Court is further directing the parties to submit an updated report on the status of discovery in this matter and a proposed schedule for the completion of the pre-trial phase of this case. The joint status report must be submitted by April 15, 2016.

## IV. CONCLUSION

Based upon the foregoing analysis, Plaintiff's motion to quash is GRANTED, in part, and DENIED, in part, to the extent set forth in this Memorandum and Order.

**SO ORDERED.**

Dated: Central Islip, New York
      March 31, 2016

      /s/ A. Kathleen Tomlinson
      A. KATHLEEN TOMLINSON
      U.S. Magistrate Judge